James Henry BIGGERS *v.* STATE of Arkansas

CR 93-913 878 S.W.2d 717

Supreme Court of Arkansas
Opinion delivered June 27, 1994
[Rehearing denied September 12, 1994.]

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

MARCELLA J. TAYLOR, Special Justice. James Henry Biggers was convicted of two counts of delivery of a controlled substance for which he received a sentence of 40 years imprisonment and a fine of $25,000 on each count. Appellant raises six points of error on appeal. None has merit, and we affirm the trial court's ruling.

Appellant's arrest and subsequent conviction stemmed from his sale of cocaine to Robert Thomas, an undercover agent of the First Judicial District Drug Task Force, on the evenings of September 20 and 21, 1991. Appellant was arrested pursuant to an arrest warrant dated November 7, 1991, and charged by prosecutor's information in January 1992. During the discovery phase of the trial, appellant found, *inter alia*, that Thomas was not a certified law enforcement officer, that Thomas had not been truthful with the First Judicial District Drug Task Force during the hiring process, that Thomas had previously been suspended by other law enforcement agencies for misconduct which included instances of lying and an investigation for theft of property, and that the First Judicial District Drug Task Force had failed in several respects to comply with the regulations of the Commission on Law Enforcement Standards and Training ("the Law Enforcement Commission") in the hiring of Thomas.

At trial, Officer Thomas testified that he purchased cocaine from appellant for $100 on the evening of September 20, 1991,

at Augusta and that he returned to Augusta the following evening and made a second $60 purchase of cocaine from appellant. Thomas also testified that an individual named Buster Driver had taken him to appellant's residence for the purpose of purchasing cocaine on both occasions. During cross-examination, Thomas was asked about and admitted to the prior instances of lying and the investigation of him for theft of property. Appellant was not allowed to present extrinsic evidence of Thomas's prior misconduct.

Officer Timothy McMahon, another undercover officer, testified that he and Thomas were in separate vehicles on the evenings of the undercover operations, but that he witnessed the drug buy between appellant and Thomas on September 20. McMahon also testified that although he saw Thomas and appellant in close proximity to each other, he was not able to see the actual purchase on September 21, 1991.

The first two assignments of error raised by appellant are that the trial court erred in failing to dismiss the prosecution against him because: (a) the hiring of Thomas was in violation of the regulations of the Law Enforcement Commission; (b) the arrest was illegal because the magistrate who issued the arrest warrant was misled by the officer who swore out the affidavit of probable cause; and (c) there was prosecutorial misconduct during the discovery phase.

Appellant points to numerous errors in the hiring of Thomas. Thomas was not a certified law enforcement officer. Although there was testimony by the officer in charge of hiring Thomas that he spoke twice with Thomas's former Chief of Police about Thomas, no written documentation of the background check was maintained in the file as required by the regulations of the Law Enforcement Commission. Thomas was not required to have a psychological examination prior to hiring as required by the regulations. The initial employment report was not filed with the Law Enforcement Commission within ten days of hiring as required by the regulations.

Appellant cites Ark. Code Ann. § 12-9-108(a) (Supp. 1989), which states: "Actions taken by law enforcement officers who do not meet all of the standards and qualifications set forth in

this subchapter or made by the Arkansas Commission on Law Enforcement Standards and Training shall not be held invalid merely because of the failure to meet the standards and qualifications." That section, according to appellant, does not save the lack of adherence to the regulations by the First Judicial District Drug Task Force because the regulations are requirements placed upon the hiring agency, not the individual officer. In this assertion, appellant is correct. But appellant also asserts that the prosecution against him was invalid because Thomas was not hired in compliance with the minimum standards set by the Law Enforcement Commission. In that assertion, appellant is not correct.

■■ Ark. Code Ann. § 12-9-108(a) (Supp. 1989) is inapplicable to the facts of this case. Thomas was not the arresting officer. He was the person who made the purchases from appellant and who served as a witness against appellant. He is not disqualified from testifying because he was not a certified law enforcement officer. *Cherry* v. *State*, 302 Ark. 462, 791 S.W.2d 354 (1990). His role in this matter was not substantially different than that of a confidential informant and the trial court did not abuse its discretion in refusing to dismiss the prosecution against appellant because Thomas was not hired in compliance with the regulations of the Law Enforcement Commission.

Appellant also asserts that the prosecution against him should have been dismissed because the arrest was illegal. The alleged illegality stems from the fact that the officer who swore out the affidavit did not reveal to the magistrate who issued the arrest warrant that Thomas was not a certified law enforcement officer, that the First Judicial District Drug Task Force failed to adhere to the regulations of the Law Enforcement Commission in the hiring of Thomas, that Thomas had been suspended from another law enforcement agency for lying to his supervisors, and that Thomas's written report of the cocaine purchases from appellant differed from his written report of his cocaine purchase from Buster Driver.

■ An illegal arrest, without more, has never been viewed as either a bar to subsequent prosecution or an absolute argument against a valid conviction. *United States* v. *Crews*, 445 U.S. 463 (1980); *Pipes* v. *State*, 22 Ark. App. 235, 238, 738 S.W.2d

423 (1987). An invalid arrest may call for the suppression of a confession or other evidence, but it does not entitle a defendant to be discharged from responsibility for the offense. *O'Riordan* v. *State*, 281 Ark. 424, 426, 665 S.W.2d 255 (1984); *Singleton* v. *State*, 256 Ark. 756, 510 S.W.2d 283 (1974).

■ Appellant raises a *Franks* v. *Delaware* argument in asserting that the officer who swore out the affidavit of probable cause willfully misled the magistrate. *See Franks* v. *Delaware*, 438 U.S. 154 (1978). In *Franks*, the Court addressed the issue of the validity of a search warrant issued pursuant to an affidavit which contained a false statement, knowingly and intentionally made, or made with reckless disregard for the truth. The issue of omissions, rather than false statements by the affiant, was recently addressed by this court in *Pyle* v. *State*, 314 Ark. 165, 862 S.W.2d 823 (1993), in which we noted that the standards articulated in *Franks* require a knowing intent to deceive, or a reckless disregard of truth. *Pyle*, 314 Ark. at 175, 862 S.W.2d at 828. Matters omitted must be material circumstances which contradict or dispel the incriminating factors in the affidavit and which render what is in the affidavit effectively false because of their nondisclosure. *Id.*

■■ Appellant presented no evidence of a knowing intent to deceive the magistrate or reckless disregard for the truth. Officer Birchler, the affiant, testified that he was unaware of Thomas's uncertified status, of any irregularities in the hiring of Thomas, or of any instances of prior misconduct on the part of Thomas. Additionally, we cannot say that this information is a material circumstance which contradicts the incriminating factors in the affidavit or renders what was in the affidavit effectively false because of its nondisclosure.

■ Appellant's argument with regard to the differences in the reports made by Thomas following the cocaine purchases from appellant and from Buster Driver presupposes that Driver was charged with the same sale as was appellant. There is no evidence in the record to support that supposition; the proffered evidence (Thomas's reports) tends to show that Thomas made two buys the night of September 20 — one from Driver and a later one from appellant. The arrest was not illegal and the trial court did not abuse its discretion in denying appellant's motion to dis-

miss the prosecution.

Appellant also argues that the prosecution should have been dismissed because of prosecutorial misconduct in the discovery phase. Appellant's discovery requests centered around gathering information about Thomas, who, by the time of appellant's arrest, had left the employ of the First Judicial District Drug Task Force and was apparently residing in Louisiana. Appellant points to the slowness with which the prosecutor complied with discovery requests and misstatements by the prosecutor regarding Thomas's status as a certified officer, the existence of a video tape of the purchases, and the representation that notes from a 1986 background check of Thomas made by the El Dorado Police Department were notes from the 1991 background check of Thomas made by the First Judicial District Drug Task Force.

■■ The key in determining if a reversible discovery violation exists is whether the defendant was prejudiced by the prosecutor's failure to disclose. *Burton* v. *State*, 314 Ark. 317, 862 S.W.2d 252 (1993). Appellant demonstrates no prejudice. Prior to the trial appellant was fully aware that Thomas was not a certified law enforcement officer, that no video tape existed, and that the notes of the background check on Thomas were generated in 1986 by the El Dorado Police Department. Appellant enlisted the assistance of the trial court which ordered the prosecutor to turn over all information about Thomas in his possession and in the possession of the First Judicial District Drug Task Force. The trial court also ordered several other law enforcement agencies in the state and the Arkansas Employment Security Division to turn over all information in their respective files about Thomas. While it appears the prosecutor did not turn over all information about Thomas in the State's possession as quickly as it perhaps should have, it is clear from the record that long before the trial appellant received all information which he requested. Dismissal of the charges against him for prosecutorial misconduct in discovery was not warranted.

Appellant's third assignment of error is that his right to present a defense was unconstitutionally restricted by the trial court. The main thrust of appellant's defense was an attack upon the credibility of Thomas. Appellant of course wished to prove Thomas's character in order to establish that he acted in conformance there-

with in the reporting of and testifying about his purchase of cocaine from appellant.

Ark. R. Evid. 404 provides that evidence of a witness's character or a trait of his character is not admissible to prove that he acted in conformance therewith except in accordance with Ark. R. Evid. 608. Ark. R. Evid. 608 provides that the character of a witness may be attacked in one of two ways: (a) by evidence in the form of opinion or reputation for truthfulness or untruthfulness; or (b) by specific instances of truthfulness or untruthfulness. Rule 608(b) states in pertinent part:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, *may not be proved by extrinsic evidence.* They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination . . . . (Emphasis supplied.)

Appellant was allowed to cross-examine Thomas not only about the specific instances of lying, but also about the investigation for theft of property. Thomas admitted to lying to his supervisors which resulted in suspension and that he had been the subject of an investigation for theft of property. Rule 608(b) expressly prohibits the introduction of extrinsic evidence to prove such misconduct, even if the witness denied the event. *Rhodes* v. *State*, 276 Ark. 203, 634 S.W.2d 107 (1982); *Urquhart* v. *State*, 30 Ark. App. 63, 783 S.W.2d 864 (1990). Appellant asserts that he should have been allowed to offer extrinsic evidence about Thomas's prior misconduct under either Ark. R. Evid. 404(b) to show Thomas's "habit" of lying, or under his constitutional rights to due process, fair trial, compulsory process and confrontation.

We first note that Ark. R. Evid. 404(b) is inapplicable to show a habit of lying. Habit may be proved under Ark. R. Evid. 406 by testimony in the form of an opinion or by specific instances of conduct sufficient in number to warrant a finding that the habit existed or that the practice was routine. Appellant proffered no evidence of Thomas's habit of lying about drug purchases sufficient in number to warrant a finding that the habit

existed or that Thomas routinely lied.

In addition, we recently observed in *Larimore* v. *State*, 317 Ark. 111, 877 S.W.2d 570 (1994), that a trial court has wide latitude to impose reasonable limits on cross-examination based upon concerns about confusion of issues or interrogation that is only marginally relevant. At issue in *Larimore* was evidence of the state medical examiner's findings in other investigations which were totally unrelated to the theory put forth by him during the trial of Larimore. The purpose of the proffered evidence was to impeach the medical examiner's credibility. Because the findings in other investigations were totally unrelated to the theory advanced against Larimore, we held that they were not consequential to a determination of whether the medical examiner's theory was to be believed and that the trial court did not abuse its discretion in refusing to allow the proffered evidence. *Id.*

Here appellant's proffered evidence was not that Thomas had previously lied about drug purchases. Appellant proffered documentary evidence regarding Thomas's prior instances of untruthfulness and the reports of the investigation for theft of property. Appellant stipulated that the authors of the documents would testify in accordance with the contents of the documents, if allowed to testify. In short, the extrinsic evidence which appellant wished to offer was no more than that about which he was allowed to question Thomas and about which Thomas admitted.

We cannot say that appellant's constitutional rights to due process, fair trial, compulsory process, and confrontation were violated by the exclusion of the proffered extrinsic evidence or that the trial court abused its discretion. We will not disturb the discretion of the trial court upon review in the absence of a showing of abuse. *Larimore* v. *State, supra; Warren* v. *State*, 314 Ark. 192, 862 S.W.2d 222 (1993); *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992).

The fourth and fifth assignments of error raised by appellant are that the trial court erred in not granting either of his two motions for a mistrial. One motion for mistrial was made when inadmissible evidence came before the jury. The second motion for mistrial was made during the prosecutor's rebuttal

closing argument. A mistrial is a drastic remedy which should be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *See, e.g., Richmond* v. *State*, 302 Ark. 498, 791 S.W.2d 691 (1990). The granting of a mistrial lies within the sound discretion of the trial court. *King* v. *State*, 312 Ark. 89, 94, 847 S.W.2d 37 (1993). We will not reverse the discretion of the trial judge in the absence of an abuse of that discretion. *King* v. *State*, 298 Ark. 476, 769 S.W.2d 407 (1989).

According to Thomas's reports of the cocaine purchases on September 20, Buster Driver referred to appellant as the "big dope man". Prior to trial appellant moved to exclude any testimony indicating that appellant was a major drug dealer. The State responded that it had no intention of asking for such testimony.

During the trial, the prosecutor asked the following open-ended question to which appellant did not object: "You said . . . Driver took you to him. Would you describe how that took place? Go through and tell us what happened at this time. I'm going to kind of turn it over to you to tell us the scenario [sic] was set up and what took place." Thomas gave the following answer:

> Well, I met with Driver there between the liquor store. . . . Driver offered to take me away from that area to where I could purchase some drugs. He led me on to Fourth Street to T.J. Biggers' residence. In route there I told him I was interested in spending $100.00. Once we got there he said that he had contact with T.J., that he was the big man in town and —

Appellant objected and moved for a mistrial. The trial court denied the motion for a mistrial, but gave the following admonition to the jury: "Members of the jury, the last response by the witness, the Court has ruled that's an inadmissible response. You are not to consider that in any way in your consideration of this case."

We have held that admonitions to the jury may be sufficient to cure statements by a witness, not elicited in bad faith, relating to other criminal activity of the accused. *See, e.g., Strawhacker* v. *State*, 304 Ark. 726, 804 S.W.2d 720 (1991); *Ronning* v. *State*, 295 Ark. 228, 748 S.W.2d 633 (1988). The state-

ment by Thomas was not solicited in bad faith. The admonition to the jury was that they were not to consider it in any way during their consideration of the case. The trial court did not abuse its discretion in refusing to grant a mistrial. We also note on this point that the record reveals that appellant failed to obtain a ruling from the trial court on his motion to exclude the evidence. It was appellant's burden to obtain a ruling on his motion. *Burnett* v. *State*, 299 Ark. 553, 776 S.W.2d 327 (1989). However, even if appellant had obtained a ruling on his motion, the result would be no different.

Appellant also sought a mistrial following a remark made by the prosecutor during the rebuttal closing argument in which he stated: "Now, has anybody got any evidence or brought any evidence to you that Robert Thomas has ever lied about anything under oath in his entire life?" Appellant's assertion is that the State was allowed to exclude extrinsic evidence (that Thomas had previously lied under oath) and then improperly used the excluded evidence as a sword against appellant. However, appellant's proffered evidence, proffered exhibit 6, does not show that Thomas lied under oath; rather it shows that when under oath, Thomas admitted that he had previously lied to a deputy prosecutor in the Thirteenth Judicial District.

Further, appellant's closing argument raised the matter of Thomas's prior instances of lying and implied that Thomas had lied during his testimony. The State is allowed to comment on those matters raised by the defense within its closing argument. *Robinson* v. *State*, 275 Ark. 473, 467, 631 S.W.2d 294 (1982); *Ruiz & Van Denton* v. *State*, 265 Ark. 875, 900, 582 S.W.2d 915 (1979). The trial court did not abuse its discretion in denying appellant's motion for a mistrial.

Appellant's sixth and final assignment of error is that the trial court should have quashed the jury panel because of the sheriff's assistance to the prosecutor, the wrongful removal of a seated juror, and the empaneling of an all-white jury.

Appellant has the burden of proving the systematic exclusion of members of his racial group from the venire. *Walker* v. *State*, 314 Ark. 628, 864 S.W.2d 230 (1993). When the jury panel is drawn by random selection, a showing that a particular

jury panel is not representative of the racial composition of the population will not make a *prima facie* showing of racial discrimination. *Cleveland* v. *State*, 315 Ark. 91, 865 S.W.2d 285 (1993); *Thomas* v. *State*, 289 Ark. 72, 709 S.W.2d 83 (1986). Appellant concedes that the evidence shows that the selection of the jury was the result of random selection of the jury panel. The trial court did not abuse its discretion in failing to quash the jury panel.

▇▇▇ Appellant's other arguments for seeking to quash the jury panel are related. During *voir dire*, the court asked whether anyone had been arrested or charged with any crime. No one responded. During the seating of the jury, the sheriff pointed out to the prosecutor that a seated juror had been previously arrested. Appellant objected to the sheriff assisting the prosecutor, asserting that the sheriff, who has a statutory duty to summon the jurors, becomes an extension of the court or an officer of the court. The sheriff is not an extension of the court; he is the chief law enforcement officer of the county. His consultation with the prosecuting attorney about the seating of a juror whom he believed had not been candid with the trial court was not improper; nor did it create the impression of a partial tribunal.

▇▇▇ Appellant asserts that the removal of the seated juror, Beverly Walker, should have caused the trial court to quash the jury panel. However, the record reflects that appellant did not ask the trial court to quash the jury panel because of the removal of Ms. Walker. Additionally, appellant failed to show how he was prejudiced by the seating of a juror in place of Walker. *Sutherland* v. *State*, 292 Ark. 103, 728 S.W.2d 496 (1987).

▇▇▇ Walker was excused for cause following an *in camera* hearing during which she admitted that she had once been held overnight in the jail when her boyfriend was arrested on a drug charge and that she had not responded to the court's question as to whether anyone had ever been arrested or charged with a crime. Her failure to affirmatively respond to the question was the basis for the State's challenge for cause. The decision to excuse a juror for cause rests within the sound discretion of the trial court and will not be overturned absent an abuse of discretion. *Cox* v. *State*, 313 Ark. 184, 853 S.W.2d 266 (1993). We find no abuse of discretion.

Affirmed.

CORBIN, J., not participating.